UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEX KHASIN,

    Plaintiff,

  v.

R. C. BIGELOW, INC.,

    Defendant.

Case No. 12-cv-02204-WHO

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 105

## INTRODUCTION

Plaintiff Alex Khasin seeks to certify a class under Rules 23(b)(2) and 23(b)(3) in this putative consumer class action regarding allegedly misleading labels on 12 varieties of R.C. Bigelow, Inc.'s green tea products. Because Khasin has not presented a viable damages model and is not entitled to injunctive relief, class certification is not appropriate, and his motion is DENIED.[1]

## BACKGROUND

Khasin seeks certification of a class of all persons in California who purchased for household use one or more of the following green tea products manufactured and sold by Bigelow since May 2, 2008: Green Tea, Green Tea Decaffeinated, Green Tea with Mint, Green Tea with Lemon, Green Tea with Lemon Decaffeinated, Green Tea with Pomegranate, Green Tea with Pomegranate Decaffeinated, Iced Green Tea with Pomegranate, Green Tea with Peach, Green Tea with Wild Blueberry and Acai, Green Tea with Wild Blueberry and Acai Decaffeinated, Green Tea with Mango (the "Green Tea Products"). Fourth Amended Complaint ("FAC") ¶4 [Dkt. No.

---

[1] The analysis in this Order matches the analysis in the Order filed today in *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-2976 (WHO) (N.D. Cal. March 29, 2016), concerning plaintiff's motion for class certification of Bigelow's black tea products.

104].[2]

All the Green Tea Products share similar size and shape packaging. *Id.* ¶6. As alleged in the FAC, the front of the Green Tea Products' packaging bears the statement, "*Healthy Antioxidants,*" and the back panel includes the statement, "*Mother Nature gave us a wonderful gift when she packed powerful antioxidants into green tea. . ..*" *Id.* ¶4. Khasin claims that "[u]nder California law, which is identical to federal law, a number of the Defendant's food labeling practices are unlawful because they are deceptive and misleading to consumers." *Id.* ¶9. These practices include: (1) "making unlawful nutrient content claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made;" (2) "[m]aking unlawful antioxidant claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the antioxidant claims being made;" and (3) "[m]aking unlawful and unapproved health claims about their products that are prohibited by law." *Id*. Due to Bigelow's prohibited actions, Khasin claims its misbranded products cannot be legally manufactured, advertised, distributed, held, or sold. *Id.* ¶16.

Khasin purchased three of the Green Tea Products: Green Tea, Green Tea with Lemon, and Green Tea Naturally Decaffeinated. *Id.* ¶111. He read and "reasonably relied" on "the antioxidant, nutrient content and health labeling claims including the 'healthy antioxidants,' and 'packed with powerful antioxidants' claims and based and justified the decision to purchase [Bigelow's] products in substantial part on [Bigelow's] package labeling including the antioxidant, nutrient content and health labeling claims." *Id*. ¶113. He "did not know, and had no reason to know," that the products were misbranded and would not have bought the products, or paid a "premium" for them, had he known the truth. *Id.* ¶115. After learning that the Green Tea Products were falsely labeled, he stopped purchasing them. *Id.* ¶117.

Bigelow asserts that in 2013 it redesigned all of its green tea labels. According to

---

[2] Bigelow argues that Khasin seeks to define his class as purchasers of all of Bigelow's green teas, which includes approximately 35 varieties. Oppo. at 4 [Dkt. No. 112]. However, despite some overly broad language in the complaint, I construe the motion for class certification as encompassing only the 12 varieties specifically delineated in the complaint. FAC ¶14 Reply at 3 [Dkt. No. 113].

1  Bigelow's data, the "*packed powerful antioxidants*" claim never appeared on at least one of the
2  Green Tea Products, the Iced Green Tea with Pomegranate. McCraw Decl. ¶7 [Dkt. No. 112-3].
3  Further, the redesign removed the "*packed powerful antioxidants*" claim from the back panel of
4  the remaining 11 identified Green Tea Products and changed the color and font size of "*Healthy*
5  *Antioxidants*" statement on the front. *Id*. ¶8. Because the changes were "rolled-out in waves" and
6  Bigelow has no way to track which retailers hold onto older inventory or which packaging is sold
7  at any given time, there is no reliable way to know whether a consumer purchase after the label
8  change indicates that the product contained the old or redesigned version of the label. *Id*. ¶11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2550-51 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

1    The party seeking certification must then establish that one of the three grounds for
2    certification applies. *See* Fed. R. Civ. P. 23(b). Here, plaintiff seeks certification under Rules
3    23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that a plaintiff show "the party opposing the class
4    has acted or refused to act on grounds that apply generally to the class, so that final injunctive
5    relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.
6    Civ. P. 23(b)(2). Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact
7    common to class members predominate over any questions affecting only individual members,
8    and that a class action is superior to other available methods for fairly and efficiently adjudicating
9    the controversy." Fed. R. Civ. P. 23(b)(3).

10    "A court's class-certification analysis . . . may entail some overlap with the merits of the
11    plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct.
12    1184, 1194 (2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license
13    to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1194-95. "Merits
14    questions may be considered to the extent – but only to the extent – that they are relevant to
15    determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

### DISCUSSION

### I.    RULE 23(b)(3)

18    For a class action to be certified under Rule 23(b)(3), the class representative must show
19    that "questions of law or fact common to the members of the class predominate over any questions
20    affecting only individual members and that a class action is superior to other available methods for
21    the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s
22    predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant
23    adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).
24    "When common questions present a significant aspect of the case and they can be resolved for all
25    members of the class in a single adjudication, there is clear justification for handling the dispute
26    on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
27    1022 (9th Cir. 1998) (internal quotation marks and citations omitted).
28    To satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff must demonstrate that

4

"damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013). The damages methodology must be tied to the plaintiff's theory of liability. In other words, Khasin's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [Bigelow's misleading conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* (internal citations and quotation marks omitted). "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks and citations omitted).

Khasin offers three damages models: (i) a restitution calculation; (ii) statutory damages; and (iii) a nominal alternative. None has merit.

Khasin's restitution calculation essentially amounts to damages totaling the full retail price of the tea. Khasin purportedly bases his calculation on a formulation I provided in a previous order – that "the proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits." Dkt. No. 68 at 1; s*ee also Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) (finding that "[t]he proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received") (internal citations and quotation marks omitted); *Ivie v. Kraft Foods Glob., Inc.*, No. 12-cv-02554-RMW, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015) (concluding that "restitutionary damages [in a mislabeling case should] be the price premium attributable to the offending labels, and no more"); *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *8 (N.D. Cal. Dec. 3, 2014) (determining the appropriate amount of restitution under a quasi-contract claim "will likely involve demonstrating what portion of the sale price was attributable to the value consumers placed on the" allegedly misleading labels). Khasin contends that the "product as labeled" is the retail purchase price. Mot. at 21 [Dkt. No. 105]. He asserts that

1  because the product is legally worthless and selling it is a criminal act, the "product as received"
2  has a value of $0. *Id.* at 21-22. Therefore, "the measure of the restitution is the average retail
3  purchase price minus $0." *Id.* at 22.

4        The "full refund" method of calculating restitution has been repeatedly rejected in this
5  district. *See, e.g.*, *See Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726,
6  at *23 (N.D. Cal. June 13, 2014) (rejecting the "legally worthless" damages model); *Werdebaugh
7  v. Blue Diamond Growers*, No. 12-cv-2724-LHK, 2014 WL 2191901, at *22 (N.D. Cal. May 23,
8  2014) ("[F]ull refund model is deficient because it is based on the assumption that consumers
9  receive no benefit whatsoever from purchasing the accused products."); *Lanovaz v. Twinings N.
10 Am., Inc.*, No. 12-cv-02646-RMW, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (rejecting
11 the "full refund" model as an appropriate measure of restitution). Attributing a value of $0 to the
12 Green Tea Products assumes that consumers gain no benefit in the form of enjoyment, nutrition,
13 caffeine intake, or hydration from consuming the teas. This is too implausible to accept.[3] In order
14 to comply with Rule 23(b)(3) requirements, the damages calculation must contemplate "the
15 production of evidence that attaches a dollar value to the consumer impact or advantage caused by
16 the unlawful business practices." *Lanovaz*, 2014 WL 1652338, at *6 (internal quotation marks
17 and citations omitted). Accordingly, Khasin must present a damages model that can likely
18 determine the price premium attributable only to Bigelow's use of the allegedly misleading claim.
19 The proposed methodology does not do so. Notably, in the same order where I clarified the
20 appropriate restitution calculation, I expressly stated that the proper measure of restitution in a
21 product mislabeling case is "not the full purchase price or all profits." Dkt. No. 68 at 1. I reject
22 Khasin's attempt to circumvent this limitation now.

23       Alternatively, Khasin seeks statutory damages under the California Legal Remedies Act
24 ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and/or nominal damages. Mot. at 18. Under the
25 CLRA, any consumer who suffers damage may bring an action to recover, among other things,
26 "[a]ctual damages, but in no case shall the total award of damages in a class action be less than

---

[3] In fact, Khasin testified he enjoyed the taste of Bigelow's tea and preferred the taste of Bigelow over Lipton. Khasin Depo. at 41:23-42:2; 42:24-42:1 [Branson Decl., Exh. 1].

6

one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That language sets the minimum for a total award of damages in a class action at $1,000 but does not provide for an automatic award. A plaintiff must still prove "actual damages" in order to be entitled to the $1,000 minimum award. Therefore "[r]elief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Jones*, 2014 WL 2702726, at *23 (internal citations and quotation marks omitted). Here, Khasin has failed to provide a viable theory for calculating damages under the CLRA that would be tied to his theory of liability.

Khasin also seeks nominal damages, but has not cited a single case demonstrating that nominal damages are available under his causes of action. His nominal damages argument relies on *Avina v. Spurlock*, 8 Cal. App. 3d 1086 (Ct. App. 1972). He asserts that nominal damages are available where there is a "technical invasion of a plaintiff's right" or when there has been "real, actual injury and damages suffered by plaintiff." Mot. at 18. However, *Avina* concerns California Code of Civil Procedure section 3360, which provides for nominal damages when there has been "a breach of duty." Cal. Civ. Code § 3360. Here, Khasin has not identified a duty, let alone a breach of duty. Without demonstrating that his claims involved these elements, Khasin is not entitled to nominal damages under section 3360. *See Jones*, 2014 WL 2702726, at *23 (finding that because plaintiffs' claim had nothing to do with a breach of duty, and plaintiffs did not identify one, they were not entitled to nominal damages under section 3360).

Accordingly, Khasin has failed to satisfy the requirements of Rule 23(b)(3).

## II. RULE 23(b)(2)

A class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm . . . coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff must establish a "real and immediate threat of repeated injury." *Id*. (internal quotation

7

marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Khasin "seeks (b)(2) certification to enjoin [Bigelow] from continuing to mislabel the subject products." Reply at 14. However, for at least two reasons, Khasin has not demonstrated standing to seek injunctive relief.

First, Khasin has not plausibly alleged an intent to purchase Bigelow products in the future. In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Khasin testified that he has not purchased any of the Green Tea Products since the commencement of this lawsuit. Khasin Depo. 60:10-13. In his reply brief, he asserts that he previously testified that "he would consider drinking Bigelow tea again if Defendant were enjoined from mislabeling the verbiage on the product's label." Reply at 15 [Dkt. No. 113]. However, a page citation supporting this statement is conspicuously left blank and I am unable to locate a section of his deposition testimony that would support this position. Instead, buried at the end of his declaration, he provides the conclusory assertion that he "would consider buying Bigelow tea again if the antioxidant claims were removed from the packages and I was assured that the product was in compliance with California law." Khasin Decl. ¶ 4 [Dkt. No. 105-1].

Khasin's testimony is unconvincing. "[A] plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future." *Rahman*, 2014 WL 5282106, at *6. Other courts considering these "conditional" declarations have found them unavailing. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 980 (C.D. Cal. 2015) (noting that "[ot]her courts have questioned whether this type of statement demonstrates there is a real and immediate threat of future injury.") (citing cases). Pursuant to Article III's standing requirements, a plaintiff must present a "sufficient likelihood" that he will be injured. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The alleged injury cannot be "conjectural" or "hypothetical." *Id.* at 102 (internal quotation marks and citations omitted). The existence of an

1    unsupported assertion in Khasin's declaration that he "would consider" purchasing Bigelow tea in
2    the future if he is assured it complies with California law does not satisfy this standard. S*ee Bates*,
3    511 F.3d at 985 (holding that a plaintiff must establish a "real and immediate threat of repeated
4    injury" to demonstrate Article III standing).

5    Second, standing for injunctive relief in this case requires more than simply declaring an
6    intent to purchase the Green Tea Products in the future. Even if Khasin were to satisfactorily
7    demonstrate a future intent to purchase the products, he has not established a likelihood of
8    suffering the same harm he has alleged. *See Morgan v. Wallaby Yogurt Co., Inc*., No. 13-cv-
9    00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) ("Plaintiffs must be must be
10   threatened by the same alleged harm in order to seek injunctive relief, even if on behalf of a class
11   of consumers."). Plaintiffs like Khasin, who were previously misled by deceptive food labels and
12   now claim to be better informed, lack standing for injunctive relief because there is no danger that
13   they will be misled in the future. *See Ham v. Hain Celestial Grp., Inc.*, No. 14-cv-02044-WHO,
14   2014 WL 4965959, at *6 (N.D. Cal. Oct. 3, 2014) ("Because [plaintiff] is now aware that
15   [defendant's] products [are mislabeled], she cannot allege that she would be fraudulently induced
16   to purchase the products in the future.").

17   For the reasons described above, Khasin lacks standing to pursue injunctive relief and has
18   failed to satisfy the requirements of Rule 23(b)(2).

19   **III.    OTHER CLASS CERTIFICATION ISSUES**

20   The judges in this district have experienced numerous putative class actions challenging
21   allegedly mislabeled food products. At least three cases involving similar class action
22   determinations are currently on appeal in the Ninth Circuit. *See Jones*, 2014 WL 2702726 (appeal
23   filed July 15, 2014); *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL
24   6901867 (N.D. Cal. Dec. 8, 2014) (appeal filed December 18, 2014); *Kosta v. Del Monte Foods,*
25   *Inc*., 308 F.R.D. 217 (N.D. Cal. 2015) (appeal filed October 02, 2015).

26   Because those cases implicate some of the central elements of the class certification
27   inquiry, such as ascertainability, predominance, and appropriate damages modeling, many of my
28   colleagues have decided to stay their mislabeling class actions pending the Ninth Circuit's

decisions. *See, e.g.*, *Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908-BLF, 2015 WL 6674696, at *3 (N.D. Cal. Nov. 2, 2015) (granting a stay in litigation pending the appeals); *Astiana v. Hain Celestial Group*, No. 11-cv-6342-PJH, Dkt. No. 114, at 3 (N.D. Cal. October 29, 2015) (same); *Park v. Welch Foods, Inc.*, No. 12-cv-6449-PSG, Dkt. No. 77, at 3 (N.D. Cal. October 22, 2015) (same); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-0492-BLF, 2015 WL 3548212, at *4 (N.D. Cal. June 5, 2015) (same); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421, at *4 (N.D. Cal. Dec. 10, 2014) (same). But both parties in this case wanted me to decide the class certification motion, so I have.

There remain other serious class certification issues implicated by this motion besides the problems with Khasin's damages theories and his injunctive relief request. Is the proposed class is sufficiently ascertainable? Has Khasin adequately demonstrated that there are questions of law or fact common to the entire class? Bigelow's label change, which allegedly removes the "*packed powerful antioxidants*" statement from back panel of the Green Tea Products and modifies the appearance of the "*Healthy Antioxidants*" claim during the class period, calls into question whether potential class members who were misled by the disputed statements are readily identifiable. Similarly uncertain is Khasin's ability to offer a method of class-wide proof that a reasonable customer would find the statements material.

I do not decide these other issues now because I have determined that the problems with Khasin's damages theories and injunctive relief request preclude certification. But in the event this order is appealed, reversed, and remanded, I suspect that in the intervening time the Ninth Circuit will have issued useful guidance in some of the other pending appeals that will help answer the other serious questions raised by Khasin's motion.

# CONCLUSION

Khasin's motion for class certification is DENIED.[4]  A Case Management Conference is set for May 17, 2016 at 2 p.m.

**IT IS SO ORDERED**.

Dated: March 29, 2016



WILLIAM H. ORRICK
United States District Judge

---

[4] Bigelow filed a motion to seal certain exhibits and portions of the Declaration of Keith R. Ugone related to pricing information of its tea products.  Dkt. No. 111.  Because I find that the provided justifications satisfy either the good cause or compelling reasons standard, the motion is GRANTED.  Bigelow also filed an objection to the Declaration of F. Edward Scarbrough.  Dkt. No. 112-1.  Because I do not rely on that declaration in reaching my conclusion, the objection is OVERRULED AS MOOT.